[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 14, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-11272
Non-Argument Calendar

_____

D. C. Docket No. 07-00851-CV-CCH-1

TIMOTHY FOSTER,

Plaintiff-Appellant,

versus

BOARD OF REGENTS OF THE UNIVERSITY
SYSTEM OF GEORGIA,

Defendant-Appellee,

GEORGIA TECH POLICE DEPARTMENT,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 14, 2009)

Before BLACK, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Timothy Foster, through counsel, appeals the grant of summary judgment to his employer, the Board of Regents of the University System of Georgia ("BOR"), on his racial discrimination failure-to-promote claim. For the reasons set forth below, we affirm.

## I.

Foster, an African American male, filed this employment discrimination action, pursuant to Title VII of the Civil Rights Act of 1964, alleging racial and gender discrimination and unlawful retaliation by BOR. Foster generally alleged that, since 1992, he had been employed by BOR as a Campus Patrol Officer with the Georgia Tech Police Department ("GTPD").[1] In the first count of his complaint, which is the only relevant count for purposes of this appeal, Foster alleged that BOR, through Police Chief Teresa Crocker, a white female, discriminated against him on the basis of race by failing to promote him to the position of Patrol Sergeant in March 2006.

After BOR filed an answer, and the parties agreed to allow a magistrate judge to preside over all proceedings, both Foster and Crocker gave sworn depositions. At his deposition, Foster testified that two vacancies for the Sergeant

---

[1] Although Foster also named GTPD as a defendant, GTPD was later dismissed from the lawsuit on the ground that it was not a legal entity capable of being sued, and Foster does not challenge this ruling on appeal.

position were available in 2006, a white officer named Henry Hunt was selected for one of the positions, and the other position was left vacant. Foster explained that, of the nine officers that applied for the positions, only he and Hunt passed the required examination, yet Hunt was the only one promoted, despite the fact that there were two positions available, and Foster believed that he was more qualified than Hunt.

BOR introduced two documents during Foster's deposition that are particularly relevant to this appeal. First, BOR introduced a written reprimand issued by a Sergeant Pestle against Foster in July 2004. Sergeant Pestle found that Foster did not timely respond to a call for assistance by a fellow officer engaged in a foot chase with a suspect. Instead, before responding, Foster first transferred personal items between his patrol vehicle and his personal vehicle, which, according to Sergeant Pestle, "showed poor judgment on [his] part." Sergeant Pestle also noted that, while Foster was standing at his personal vehicle, he called in on his radio that he was "code twenty six on Northside Drive." Sergeant Pestle warned Foster that "[f]urther conduct of this nature [would] result in further disciplinary action up to and including termination of [his] employment at Georgia Tech Police Department."

Second, BOR introduced Foster's employment evaluation covering April

3

2005 to March 2006. The evaluation form was comprised of the following categories: work habits, job knowledge, communications, attendance/punctuality, teamwork, productivity, customer service, and overall rating. For each category, there were four possible ratings: highly successful, fully successful, making progress, or unsatisfactory. Foster received a rating of "fully successful" in every category except productivity, in which he received a rating of "making progress." Although the brief comments at the end of Foster's evaluation were generally positive, the evaluator stated that "Foster needs to become more proactive in his approach to patrol duties such as traffic stops and officer initiated contact with other citizens."

At her deposition, Crocker explained that she had relied on the above two documents when deciding not to promote Foster to one of the two vacant Sergeant positions. With respect to the reprimand, Crocker emphasized the fact that Foster was dishonest when he "radioed that he was Code 26, which meant that he was at the location of the incident," when in fact he was transferring personal items between his two vehicles. With respect to the evaluation, Crocker emphasized the fact that, despite his many years of service, Foster was still "making progress" in the area of productivity, which, according to Crocker, was "one of the most critical areas of your patrol function . . . ." In this respect, Crocker explained that

4

productivity was a critical part of the evaluation because it measured what the officer was doing on a daily basis:

> Are they doing anything. Are they out there meeting the public. Are they doing things with people. Interacting with the community. Are they writing tickets. Are they writing warnings. Are they arresting people. Are they taking people to jail. Are they finding people that are breaking into things.

> How many of those things are occurring on a daily basis where this officer is actually out there doing those things as compared to another officer who's out there that has significantly more daily activities.

In sum, Crocker justified her decision as follows: "I say to you that somebody that has a letter in their file that deals with integrity, somebody that has been with the department for 12 years and they are still making progress is not anybody that I want in the position of supervising others."

BOR filed a motion for summary judgment. With respect to Foster's racial discrimination claim in connection with the 2006 promotion, BOR assumed for purposes of the motion that Foster had established a prima facie case, but it argued that Crocker had legitimate, non-discriminatory reasons for not offering Foster the promotion. Specifically, BOR asserted that Crocker did not offer Foster the position because he "had the written reprimand in his file and his most recent performance evaluation indicated he was 'making progress' in the area of productivity."

5

Foster responded that these proffered reasons were a pretext for discrimination because, <u>inter alia</u>: Christopher Huggins, whose affidavit was attached to the response, had been promoted to Sergeant even though he had a disciplinary letter in his file; Foster's alleged deficient productivity was belied by the fact that he was chosen to train newly hired officers; and Hunt was not eligible for a promotion because he had not yet completed his training.

The magistrate judge ultimately granted BOR summary judgment on all of Foster's claims. With respect to the above claim, the magistrate first accepted BOR's concession that Foster had made out a <u>prima facie</u> case of racial discrimination, but he found that BOR had provided two legitimate, non-discriminatory reasons for failing to promote Foster, namely, the written reprimand in his file and the "making progress" rating in the area of productivity on his most recent evaluation. The magistrate then concluded that Foster could not show that BOR's proffered reasons were pretextual. This appeal followed.

**II.**

We review the grant of summary judgment <u>de novo</u>. <u>Rioux v. City of Atlanta, Ga.</u>, 520 F.3d 1269, 1274 (11th Cir. 2008). "Summary judgment is rendered 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

6

any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Fed.R.Civ.P. 56(c)). "In making this assessment, the Court must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the non-movant." Id. (quotations and citations omitted).

"Title VII prohibits employers from discriminating 'against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" McCann v. Tillman, 526 F.3d 1370, 1373 (11th Cir.) (quoting 42 U.S.C. § 2000e-2(a)), cert. denied, 129 S.Ct. 404 (2008). In this case, there is no dispute that Foster failed to produce direct evidence of discrimination, and, therefore, he was required to "prove discrimination through circumstantial evidence, using the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." Id.

"Under this framework, if the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action." Crawford v. Carroll, 529 F.3d 961, 976 (11th Cir. 2008) (quotation omitted). "To satisfy this intermediate burden, the

7

employer need only produce admissible evidence which would allow the trier of fact to rationally conclude that the employment decision had <u>not</u> been motivated by discriminatory animus." <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1528 (11th Cir. 1997) (quotation and alteration omitted).

"If the employer does this, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination." <u>Crawford</u>, 529 F.3d at 976. "A reason is not [a] pretext for discrimination unless it is shown <u>both</u> that the reason was false, <u>and</u> that discrimination was the real reason." <u>Brooks v. County Com'n of Jefferson County, Ala.</u>, 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation omitted). A plaintiff's evidence of pretext "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." <u>Vessels v. Atlanta Independent School System</u>, 408 F.3d 763, 771 (11th Cir. 2005) (quotation omitted). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1030 (11th Cir. 2000) (<u>en banc</u>).

**III.**

As BOR points out, Foster has abandoned all of his claims on appeal except his claim that BOR racially discriminated against him by failing to promote him to Sergeant in March 2006.  See Rioux, 520 F.3d at 1274 n.4 (arguments not raised on appeal are abandoned).  The magistrate assumed arguendo that Foster made out a prima facie case on this claim, and BOR does not take issue with that assumption on appeal.

There is also no dispute that BOR proffered two legitimate, non-discriminatory reasons for failing to offer Foster one of the two vacant Sergeant positions.  Specifically, BOR explained in its summary judgment motion that Crocker did not offer Foster a promotion because of the written reprimand in his file and the "making progress" rating in the area of productivity on his most recent employment evaluation.  See Chapman, 229 F.3d at 1030 n.19 ("[W]e take the reason proffered by the employer at the time of summary judgment, the reason presented to the district court, and examine it.").  Thus, the burden shifts to Foster to show that both of these reasons were a pretext for discrimination.  Crawford, 529 F.3d at 976; see Chapman, 229 F.3d at 1024-25 ("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim.") (emphasis

added).

Foster asserts that Crocker's reliance on the reprimand in his file was a pretext for discrimination because Huggins, who also had a disciplinary letter in his file, was promoted to Sergeant. However, Foster fails to recognize that Huggins, like himself, is African American. As a result, Foster cannot show – at least by reference to Huggins – that race was the real reason behind Crocker's decision not to promote him.[2] See Brooks, 446 F.3d at 1163 (requiring the plaintiff to show that discrimination was the real reason for the employer's decision).

Nonetheless, even if Huggins was white, Foster still could not show that Crocker's reliance on the reprimand was pretextual. This is so because neither Foster (in his deposition) nor Huggins (in his affidavit) provided any details about the disciplinary action taken against Huggins. Thus, Foster could not show that he was similarly situated to Huggins, yet was subject to different treatment. See Silvera v. Orange County School Bd., 244 F.3d 1253, 1259-62 (11th Cir. 2001) (rejecting the plaintiff's pretext argument because his prior disciplinary misconduct, which formed the basis of the adverse employment action, was not

---

[2] In one sentence of his brief, Foster also states: "There was also evidence in the record that a Caucasian employee had a disciplinary action in his file when he was promoted to the position of Sergeant by [Chief] Crocker." However, Foster does not identify this individual and provides no citation to the record. See Fed.R.App.P. 28(a)(9)(A) (requiring the appellant's brief to include "citations to the authorities and parts of the record on which the appellant relies").

"nearly identical" to the misconduct of a non-minority, comparator). Thus, Foster has not met his burden to show that Crocker's reliance on the reprimand was a pretext for discrimination.

Foster has also failed to rebut BOR's second proffered reason for failing to offer him the promotion. Foster implicitly challenges Crocker's reliance on the "making progress" rating in his most recent evaluation by pointing out that, despite the evaluation, Crocker nonetheless allowed him to continue to serve as a training officer. However, this does not demonstrate pretext, as Crocker testified that there was a significant difference between the duties of a training officer and a Sergeant, explaining that, while a training officer was required only to supervise a single officer, a Sergeant was required to supervise an entire shift and make split-second decisions in emergency situations. Moreover, Crocker repeatedly testified that the selection of training officers was a lower-level decision made by other officers, and she was therefore unaware of Foster's training schedule. In any event, Crocker also testified that, despite the reprimand and evaluation, she was not surprised to learn that Foster, a senior officer, continued to serve as a training officer in light the department's high turnover rate. Indeed, Crocker testified that officers with less than one year of experience had even been asked to train new officers. Thus, the fact that Foster continued to serve as a training officer does not show that

11

Crocker's reliance on his evaluation was a pretext for discrimination.

Finally, and although not directly attacking either of BOR's proffered reasons, Foster asserts that Crocker "seemed" to review Foster's entire file without reviewing Hunt's entire file. However, Foster failed to raise this argument in response to BOR's summary judgment motion, and he has therefore waived it for purposes of this appeal. Transamerica Leasing, Inc. v. Institute of London Underwriters, 267 F.3d 1303, 1308 n.1 (11th Cir. 2001), aff'd after remand, 430 F.3d 1326 (11th Cir. 2005). In any event, Foster does not point to anything in the record supporting his argument, and Crocker repeatedly testified that she generally considered an applicant's entire package when evaluating his candidacy.

In sum, Foster has not met his burden to show that either, let alone both, of BOR's legitimate, non-discriminatory reasons for failing to promote him were a pretext for discrimination. Accordingly, we affirm the grant of summary judgment to BOR.

**AFFIRMED.**